UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE G.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.:  20-cv-1233-AJB-DEB<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[DKT. NOS. 15, 18]** |

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1.c.

## I.     INTRODUCTION

Plaintiff Grace G. seeks review of the Commissioner of Social Security's denial of disability benefits and supplemental social security income. Dkt. No. 1. The parties filed Cross-Motions for Summary Judgment and Plaintiff filed a Reply. Dkt. Nos. 15, 18, 19. On October 26, 2021 and November 12, 2021, Plaintiff filed a Notice of New Authority and additional briefing. Dkt. Nos. 20, 22. Defendant did not file a response.

For the reasons set forth below, the Court recommends DENYING Plaintiff's Motion for Summary Judgment and GRANTING Defendant's Motion for Summary Judgment.

## II. PROCEDURAL BACKGROUND

On December 6, 2016, Plaintiff applied for disability insurance benefits and supplemental social security income, claiming disability beginning January 1, 2015. AR 213–22.[1] The Social Security Administration denied Plaintiff's claim on March 8, 2017, and on reconsideration on July 21, 2017. AR 118, 124. On September 15, 2017, Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on March 5, 2019. AR 32, 129. On April 11, 2019, the ALJ issued a decision finding Plaintiff not disabled. AR 12–31. On May 1, 2020, the Appeals Counsel denied Plaintiff's request for review. AR 1–6. On July 1, 2020, Plaintiff filed this case. Dkt. No. 1.

## III. SUMMARY OF ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2015. AR 17.

At step two, the ALJ found the following severe medically determinable impairments: degenerative disc disease of the cervical spine, depression, anxiety, and post-traumatic stress disorder. *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled those in the Commissioner's Listing of Impairments. AR 18.

Before proceeding to step four, the ALJ determined Plaintiff had the physical residual functional capacity ("RFC") to perform:

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [Plaintiff] can frequently climb ramps and stairs.

---

[1] "AR" refers to the Administrative Record lodged on December 9, 2020. Dkt. No. 13. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

> [Plaintiff] can frequently balance, stoop, kneel, crouch, and crawl. [Plaintiff] can only occasionally climb ladders, but can never climb ropes or scaffolds. [Plaintiff's] reaching with the right upper extremity in all directions including overhead is limited to frequent. [Plaintiff] can perform simple, unskilled work. [Plaintiff] requires a job where there is no more than occasional interaction with coworkers, supervisors, and the public. [Plaintiff] is limited to work where interaction with the public is not a primary component of the job.

AR 19.

At step four, the ALJ concluded Plaintiff could not perform her past relevant work. AR 25.

Finally, at step five, the ALJ accepted the vocational expert's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy. AR 26–27. The ALJ, therefore, concluded Plaintiff was not disabled. AR 27.

## IV. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the ALJ applied the proper legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation omitted). "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the Commissioner's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## V.   DISCUSSION

### A. Constitutionality

As a threshold matter, the Court addresses Plaintiff's Notice of New Authority. Dkt. Nos. 20, 22. Plaintiff contends the Social Security Administration's ("SSA") former Commissioner Andrew Saul "was not removable at the pleasure of the President making his delegations to the ALJ in this matter constitutionally infirm." Dkt. No. 22 at 3.

The Social Security Commissioner may only be removed from office "pursuant to a finding by the President of neglect of duty or malfeasance in office" ("removal clause"). 42 U.S.C. § 902(a)(3). Plaintiff argues the removal clause is unconstitutional as the Office of Legal Counsel opined. *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. -----, slip op., 2021 WL 2981542 (July 8, 2021) ("We . . . conclude that the President may remove the SSA Commissioner at will."). Plaintiff asserts Supreme Court decisions also establish the unconstitutionality of the removal clause, therefore: (1) "[t]he ALJ decision was not reviewed under a policy oversight process subject to the executive power" because "Commissioner Saul was not removable at the pleasure of the President;" (2) the ALJ who heard and decided Plaintiff's case and the Appeals Council who decided Plaintiff's appeal were without constitutional authority to do so; and (3) "[t]he Court should reverse and remand" as a remedy. Dkt. No. 22 at 3–4 (citing *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), and *Collins v. Yellin*, 141 S. Ct. 1761 (2021)).

In *Seila Law*, the Supreme Court held: (1) the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed the CFPB Director to be removed by the President only for "inefficiency, neglect, or malfeasance of office," violated separation of powers by insulating the Director from removal by the President; and (2) "the CFPB Director's removal protection is severable from the other statutory provisions bearing on the CFPB's authority." 140 S. Ct. at 2192, 2197, 2211.

In *Collins*, the Supreme Court considered a similar constitutional challenge to the Federal Housing Finance Agency ("FHFA"), which was headed by a director who could

only be removed "for cause." 141 S. Ct. at 1770. The Supreme Court determined "*Seila Law* is all but dispositive" and concluded the "for cause" restriction on the President's removal power violated separation of powers. *Id*. at 1783, 1787. The Court concluded, however, "the officers who headed the FHFA during the time in question were properly *appointed*. . . . As a result, there [was] no reason to void any of the actions taking by the FHFA . . . ." *Id*. at 1787. The Court determined it was "possible for an unconstitutional provision to inflict compensable harm," and remanded to the lower court to determine whether the removal provision "inflicted harm." *Id.* at 1788–89.

Applying *Seila Law* and *Collins*, Plaintiff's argument fails. Section 902(a)(3) is severable from the remainder of the statutes governing the social security program. *See Seila*, 140 S. Ct. at 2211; *see also Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. -----, slip op., 2021 WL 2981542 (July 8, 2021) ("We . . . conclude that disregarding the constitutionally unenforceable restriction on removal in 42 U.S.C. § 902(a)(3) would not affect the validity of the remainder of the statute."). Accordingly, the removal clause does not affect adjudication of social security benefits. Plaintiff, therefore, cannot demonstrate that any unconstitutionality in the removal clause inflicted harm. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."); *accord Collins*, 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

The Court, therefore, concludes any constitutional deficiencies in § 902(a)(3) does not affect the validity of the ALJ's decision here. *See Standifird v. Kilolo Kijakazi*, No. 20-cv-1630-GPC-BLM, Dkt. No. 25 at 6 (S.D. Cal. Dec. 1, 2021) (rejecting identical arguments because: "[p]laintiff has not demonstrated that she was harmed" by any

unconstitutionality in the removal clause, and the ALJ "was properly appointed."); *Tracey Anne P. v. Kijakazi*, No. 20-cv-1163-LAB-RBB, 2021 WL 4993021, at *18 (S.D. Cal. Oct. 27, 2021) ("[O]ther courts have found [cases calling into question the constitutionality of the removal clause] irrelevant to the consideration of the merits in social security disability actions.").

**B. Merits**

Plaintiff contends the ALJ committed four errors: (1) incorrectly weighing the findings of the Commissioner's Consultative Examiner Dr. Thomas Sabourin; (2) failing to explain the weight afforded to a physician assistant's "findings," a nurse practitioner's physical therapy referral, and physical therapy notes; (3) finding Plaintiff "recovered by May 2017" without "support of substantial evidence in the record as a whole"; and (4) improperly "rejecting [Plaintiff's] subjective experience of pain and dysfunction." Dkt. No. 15 at 8–9. The Court addresses each of these claimed errors in turn.

*i. Dr. Sabourin's Opinion*

After conducting an orthopedic examination on February 14, 2017, Dr. Thomas Sabourin opined:

> [Plaintiff] could lift or carry 50 lb occasionally 25 lb frequently. She could stand and walk 6 hours of an 8-hour workday and sit for 6 hours of an 8 hour work day. Push/pull limitations are equal to lift/carry limitations. She could climb, stoop, kneel, and crouch frequently. She could work with the right arm above shoulder level frequently. She has no need for assistive devices.

AR 321.

The ALJ afforded Dr. Sabourin's opinion "great weight" because it was "consistent with the longitudinal evidence of record." AR 22. Plaintiff argues "[t]he ALJ did not articulate a rational basis for accepting the full range of motion [in Dr. Sabourin's opinion]

and rejecting the limited range of motion described in the treatment notes." Dkt. No. 15 at 8.[2]

An ALJ may rely on a consultative examiner's ("CE") opinion to determine a claimant's RFC if it is supported by clinical tests and an independent examination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("[CE's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of [the claimant].").

Here, Dr. Sabourin rendered his opinion after an orthopedic examination that included "formal physical examination procedures and observations of [Plaintiff's] movements and actions during the taking of the history and physical examination." AR 317. Because Dr. Sabourin conducted an independent examination, the ALJ did not err by giving his opinion great weight. *See Belmontez v. Colvin*, No. 14-cv-1590-PLA, 2015 WL 2063945, at *6 (C.D. Cal. May 4, 2015) (finding ALJ did not err in assigning significant weight to CE's opinion where opinion was "supported by [examiner's] independent clinical findings"); *Nancy J. M. v. Saul*, No. 19-cv-01144-RAO, 2020 WL 1975364, at *11 (C.D. Cal. Apr. 24, 2020) (same).

Although Plaintiff argues various treatment records show she was more limited than Dr. Sabourin found, Dkt. Nos. 15 at 8; 19 at 2 (citing AR 331, 342, 362, 371), "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).[3]

---

[2]    Plaintiff's Reply clarifies the treatment notes at issue are: (1) emergency department records from Scripps Encinitas for services rendered on February 17, 2017; (2) emergency department records from North County Health for services rendered on February 22, 2017; and (3) office treatment records from North County Health Services dated March 24, 2017 and May 22, 2017. Dkt. No. 19 at 2 (citing AR 331, 342, 362, 371).

[3]    The treatment notes considered by the ALJ also show "minimal rotator cutoff tendinosis/tendinopathy but without a tear" (AR 337), "no signs of fracture or dislocation" (AR 363), and "[no] significant articular abnormality" (AR 373). *See* AR 22.

Accordingly, the Court finds no error in the weight the ALJ afforded to Dr. Sabourin's opinion.

### ii. Physical Therapist's and Nurse Practitioner's Notes

Plaintiff next challenges the ALJ's failure to explain the "weight given or withheld" to a physician assistant's "February and March 2017 findings of restricted motion" and a nurse practitioner's "therapy recommendations and notes describing [Plaintiff] as in need for further treatment to restore function." Dkt. No. 15 at 8. Specifically, Plaintiff alleges the ALJ failed to discuss February 22, 2017 Scripps Emergency Department notes and related lab results (AR 331, 371); notes and an accompanying physical therapy referral from a February 22, 2017 "established care visit" with Nurse Practitioner Lung Loui (AR 348, 363); and a physical therapy treatment note setting a four-week "goal" for Plaintiff to be able to perform certain activities without pain (AR 470). Dkt. No. 15 at 8. This argument also lacks merit.

"An ALJ must evaluate every medical opinion in the record." *Smith v. Kilolo Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

None of the records Plaintiff cites contain medical opinions regarding her functional capacity. *See Lim v. Saul*, No. 18-cv-07519-VKD, 2020 WL 2557000, at *8 (N.D. Cal. May 20, 2020) (finding treatment notes were not a "medical source opinion" where they were "merely [physician's] observations, not her judgments or opinions regarding what [plaintiff] can or cannot do or what his physical or mental limitations are."). The ALJ, therefore, was not required to explain or evaluate them. *Kaminski v. Kijakazi*, 856 F. App'x

735, 736 (9th Cir. 2021) ("Because the treating psychiatrists' treatment notes offered no opinion about the severity of [plaintiff's] mental impairments or any functional limitations that those impairments caused, they are not medical opinions that the ALJ must address in its disability determination."); *accord Bass v. Berryhill*, No. 18-cv-07053-DMR, 2020 WL 1531324, at *5 (N.D. Cal. Mar. 31, 2020) ("[Plaintiff] cites to treatment notes, not medical opinions. . . . While these records are part of the medical evidence, they are not medical opinions that the ALJ was required to individually discuss and weigh.").

        iii. *May 2017 Recovery*

Plaintiff argues the ALJ's determination that "[Plaintiff] recovered by May 2017 lacks the support of substantial evidence in the record as a whole." Dkt. No. 15 at 8. Plaintiff's argument, however, misreads the ALJ's decision, which states "the record lacks evidence of [Plaintiff's] physical impairments after May of 2017." AR 22. The ALJ's reading of the record is accurate. The AR contains no evidence establishing Plaintiff received any treatment for her degenerative disc disease after May 2017. *See* AR 390–406, 424–85 (treatment for right breast lesion and one report for "headache and achy feeling in chest" between June 14, 2017 and February 15, 2019).[4] The ALJ, therefore, accurately described the record.

//
//
//
//
//
//
//
//

---

[4]    A review of the AR shows only these treatment records postdate May 2017.

                *iv.  Plaintiff's Pain Testimony*

Finally, Plaintiff argues the ALJ "did not articulate clear and convincing reasons for rejecting [Plaintiff's] subjective experience of pain and dysfunction." Dkt. No. 15 at 9. The Court finds the ALJ's analysis met the applicable legal standards.

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of her symptoms if she gives specific, clear and convincing reasons for the rejection." *Id.* (internal quotation omitted); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

Plaintiff lives with her 21-year-old son in his apartment. AR 36. In her April 20, 2017 and September 18, 2017 Disability Reports, Plaintiff reported:

- I suffer from chronic pains in my lower back and right knee as well as migrations [sic] that have become worse in the last 6 months;

- My physical pain in my shoulder and neck make basic [activities of daily living] close to impossible. Bathing, brushing my hair and dressing are extremely difficult at times. My lower back and knee pain have made walking up or down steps on uneven surfaces, i.e. sand, stairs painful and difficult;

- After 20 years of tending bar, I am no longer viable in that position due to my physical and emotional limitations . . . . [E]veryday is a challenge for me;

- My neck, right shoulder are still bothersome more often than not as well as my lower back tail bone area right hip and knees. And I continue to suffer w[ith] migraine headaches . . . ; and

- It[']s very hard to complete ordinary tasks of daily living. My joint pain in my knees lower back and neck and right shoulder have gotten much worse. I have a very hard time walking up and down stairs due to the severe pain in my knees. I do not have regular sleep patterns due to pain and mental anxieties.

AR 258–79.

Plaintiff testified similarly at the March 5, 2019 hearing:

- I have a lot of neck pain. Sometimes I can't turn my head to the right – and right shoulder pain. In my elbows as well. . . . I can't stand for long periods of time. Knee – I have knee pain;

- There are times that I can't barely lift my arm above to, like, put my shirt on. It can be difficult washing my hair. . . I drop things;

- [Sitting] can start to cause pain [in] my neck and should area after a period of time [10 minutes];

- When I am standing, I will get lower back pain . . . down my buttocks;

- I can't stand or sit for too long; and

- [I don't currently drive because] [s]ometimes my neck. It's hard for me to turn my head – it's hard to get in and out of the car. I don't – its' a crazy, insane pain that I get. Also[,] my registration's expired, my tires are bald.

AR 39–53.

The ALJ found Plaintiff suffered from medically determinable impairments that "could reasonably be expected to cause the alleged symptoms." AR 20; *accord Vasquesz*, 572 F.3d at 591 (finding ALJ "satisfied the first prong of the ALJ's inquiry regarding the credibility of [plaintiff's] complaints" where the "ALJ acknowledged that [plaintiff's] injuries could reasonably be expected to produce *some* of the pain and other symptoms

alleged") (internal quotation marks omitted). The ALJ found Plaintiff's statements not fully credible, however, because her "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 20. The ALJ found "the nature, severity, frequency, duration, and persistence alleged" were not supported by: (1) the conservative nature of Plaintiff's treatment; (2) the longitudinal medical history; (3) presentation and clinical observations at appointments; and (4); objective medical evidence. *Id.*[5]

The ALJ's determination is supported by substantial evidence. Evidence of conservative treatment "is sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ noted Plaintiff only "treated her pain with over the counter medication." AR 21 (citing Dr. Sabourin's Orthopedic Examination). The ALJ also noted, despite reporting pain in her lower back, "[Plaintiff] never sought treatment." AR 21 (citing Dr. Sabourin's Orthopedic Examination). This finding supports rejecting Plaintiff's subjective symptom testimony. *See Azevedo v. Comm'r of Soc. Sec.*, No. 19-cv-01073-KJN, 2020 WL 5633008, at *7 (E.D. Cal. Sept. 21, 2020) ("[T]he court finds that plaintiff's relatively conservative treatment and failure to seek a more aggressive treatment plan constitutes a clear and convincing reason to discount plaintiff's subjective symptom testimony.").

Moreover, in evaluating Plaintiff's complaints of back, neck, and shoulder pain, the ALJ cited contrary findings from Plaintiff's physical examinations, x-rays, MRI imaging, and other medical testing. AR 21 (citing AR 318–19 (Dr. Sabourin's observations that Plaintiff "walks without a limp. She has no assistive devices. Toe and heel walking is normal"; normal "Trendelenburg test"; "Supine and sitting straight leg raising was negative"; normal motor strength and range of motion in all extremity examinations);

---

[5] The ALJ also determined "inconsistencies with [Plaintiff's] daily functioning" was reason to discredit Plaintiff's psychological symptom testimony. AR 20, 23. Plaintiff does not challenge this finding.

AR 337 (MRI results showing only "[m]inimal rotator cuff tendinosis/tendinopathy but without a tear"); AR 363 (Nurse Practitioner Louie's "2/17/2017 ER note: Seen for right shoulder pain, taking ibuprofen and Advil. X-rays were normal, no signs of fracture or dislocation"); AR 409 (Physician Assistant Jeremy Blakespear ER Follow-Up notes: "Normal movement of all extremities" and normal X-Ray imaging)). The ALJ, therefore, properly considered Plaintiff's "presentation and clinical observations at appointments" (AR 20) to discount Plaintiff's subjective symptom testimony. *Carmickle v. Commr, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Finally, regarding Plaintiff's testimony of continued debilitating pain, the ALJ "note[d] that the record lacks evidence of the claimant's physical impairments after May of 2017." This also supports the ALJ's credibility determination. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("[T]he ALJ with clear and convincing reasons properly declined to rely on testimony pertaining to current levels of pain . . ." where, in part, "the ALJ noted the absence of medical treatment for claimant's back problem . . . suggesting that if the claimant had actually been suffering from the debilitating pain she claimed she had, she would have sought medical treatment during that time."); *see also* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work.").

In sum, the ALJ provided clear and convincing reasons to discount Plaintiff's subjective pain testimony.

//
//
//

## VI. CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) denying Plaintiff's Motion for Summary Judgment (Dkt. No. 15); and (3) granting Defendant's Motion for Summary Judgment (Dkt. No. 18).

**IT IS ORDERED** that on or before **January 13, 2022**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed with the Court and served on all parties on or before **January 20, 2022**.

**IT IS SO ORDERED**.

Dated: December 28, 2021

_Daniel E. Butcher_
Honorable Daniel E. Butcher
United States Magistrate Judge